### HACK *v.* SEXTON.

*(Supreme Court, General Term, Fifth Department.* January 22, 1892.)

VENDOR AND VENDEE—ACTION FOR PRICE.

A mortgagor, to save the expense of foreclosure, conveyed the fee of land to the mortgagee, with the understanding that the grantee should pay what was right therefor. Afterwards the grantee discovered other liens, which, together with his mortgage, amounted to more than the purchase price asked by the grantor at the time of the transfer. *Held*, in an action by the grantor for unpaid purchase money, where the only witness of plaintiff fixed the maximum value at $337.31 above the incumbrances, and eight witnesses for defendant, neighbors and farmers, fixed the maximum value of the farm at $1,000 less than the incumbrances thereon at the time of the transfer, that a verdict allowing plaintiff $500 was not sustained by the evidence.

Appeal from circuit court, Monroe county.

Action by Mary E. Hack against Plinny T. Sexton. From a judgment entered on a verdict for plaintiff and from an order denying a motion for a new trial defendant appeals. Reversed.

The action was brought to recover the purchase price of a farm situated in the town of Macedon, Wayne county, containing about 31 acres, which was conveyed to the defendant by the plaintiff, March 16, 1887. The plaintiff's complaint alleged that no price was agreed upon for the land at the time it was conveyed to the defendant, but that it was conveyed upon the understanding, intention, and agreement that the defendant should pay the plaintiff therefor a just and reasonable sum, and that the land was of the value of $5,000. Defendant's answer set up payment in full. There were incumbrances on the land at the time it was conveyed. The jury, by their verdict, found that the plaintiff's equity in the premises was worth the sum of $500, and rendered a verdict for that amount.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*S. B. McIntyre,* for appellant. *Garlock & Beach,* for respondent.

LEWIS, J. The question presented by this appeal is whether the verdict was sustained by the evidence. The plaintiff became the owner of the farm some 13 or 14 years before she conveyed it to the defendant. It was, at the time it was conveyed to her, incumbered by a mortgage for the sum of $2,500. The plaintiff and her husband entered into possession and occupied the farm down to the time that it was sold to the defendant. They were not able from the proceeds therefrom to pay their living expenses and the interest upon the incumbrance. They became involved, and, not being able to pay their debts, they applied to the appellant for aid, and he loaned them money from time to time. He took an assignment of the $2,500 mortgage upon the farm. The plaintiff gave to the defendant another mortgage upon the farm to secure the payment of the money which he had advanced to her. Plaintiff's indebtedness to the defendant continued to increase, the defendant was not willing to advance any more money, and insisted upon the plaintiff either paying or

in some way reducing the amount thereof. The plaintiff and her husband made efforts to sell the place, offering it for the sum of $4,000, but were not able to find a purchaser. At their request the appellant made efforts to sell the place, and, not being able to find a purchaser, he suggested to the plaintiff and husband that, with a view of saving the expense of a foreclosure of the mortgage, they should deed the place to him, and he promised to pay to them what was just and reasonable for the farm. The incumbrances, at the time it was conveyed to the defendant, aggregated $4,162.69, consisting of the two mortgages and two judgments which had been recovered against the plaintiff.

The burden of proof was upon the plaintiff to show what her equity in the farm was worth, if anything. She called as a witness Mr. Edward Gage, who testified that he resided in the vicinity of the farm; was a carpenter by trade; had worked some at farming; that in his opinion, if a man could be found who had a fancy for the farm, it was worth between $4,000 and $4,500. Plaintiff's husband testified that three or four years prior to March, 1887, a Mr. Stone, who lived either in Williamson or Ontario, he couldn't tell which, came to their place, and offered $5,000 for it; that he pulled the money partly out of his pocket, and said, "There is the money." In speaking of the interview with Mr. Stone, in another part of his testimony, he stated that when Stone came there he had $4,000 which he was willing to pay down for the farm. He testified that the trade did not take place because a Mr. Durfee held a 7 per cent. mortgage upon the farm, and he would not surrender it. Both plaintiff and her husband testified that, when talking with the defendant about deeding the farm to him, they stated that they ought to get what they paid for it,—$5,000. Neither of them testified what they thought the place was in fact worth. This was all of the testimony produced by the plaintiff tending to show the value of the farm. The offer of Mr. Stone, made three or four years before the transfer to the plaintiff, to pay four or five thousand dollars for the farm, was very slight, if any, evidence of its value in the year 1887. The statements of the plaintiff and her husband, when they were negotiating with the defendant, that they wanted to get $5,000 for the place, were no evidence of its value. So that, in fact, the only evidence the plaintiff produced, tending to show the value of the farm at the time it was conveyed to the defendant, was the testimony given by the witness Edward Gage. The defendant testified that he from time to time advanced money to the plaintiff, until the incumbrances upon the farm amounted to more than he thought it was worth; that he frequently urged the plaintiff to try to sell the place, and offered to assist her in finding a purchaser; he offered it for $4,000, but could not find a purchaser at that price; that as the plaintiff was unable to sell, and could not pay the interest upon the incumbrances, she consented to deed the place to him, and that he did agree to do what was right in regard to paying for it. Before accepting the deed, he assigned the mortgages to his wife; that his object in taking the deed was to save the expense of a foreclosure of the mortgages; that he did not know, at the time he took the conveyance, that the two judgments had been recovered and were liens upon the place; that the judgments amounted to between five and six hundred dollars, and that when he learned of the judgments he declined to pay anything more to the plaintiff, as it would be necessary to foreclose the mortgages to perfect the title. He offered, after it was conveyed to him, to deed plaintiff the property in case of payment of his claims against plaintiff. The defendant called eight witnesses, who testified that they were farmers, and resided in the neighborhood of the farm, and were acquainted with it, and knew the value of such property. Their opinions as to its value varied somewhat in amount. The highest price fixed by any of them was the sum of $3,100. Some of them testified that it was not worth to exceed $2,500. They testified that farming lands in that locality had been receding in value

for a number of years, and were not worth from 25 to 40 per cent. as much as they were 15 or 20 years before. They testified that the farm had been neglected, and when conveyed to the appellant was in a dilapidated condition. The incumbrances upon the farm, as we have seen, amounted, at the time of the conveyance thereof to the appellant, to the sum of $4,162.69. Of this amount, all but between five and six hundred dollars was made up of the indebtedness of the plaintiff to the defendant. Deducting the incumbrances from the larger price fixed by Gage, the plaintiff's interest therein was only $337.31; but, as we have seen, the great weight of evidence established its value to be at least a thousand dollars less than the incumbrances thereon, and several hundred dollars less than the amount of plaintiff's indebtedness to the defendant. It is well known that farming lands in this state, and in the eastern states, have steadily and seriously depreciated in value for the past 15 or 20 years. It is obvious, from an examination of the evidence in this case, that the farm was not worth the amount of plaintiff's indebtedness to the defendant. The jury must have arbitrarily fixed the amount of their verdict, without giving any consideration to the weight of the evidence. They evidently allowed their sympathies, and perhaps their prejudices, to control and guide their judgments. The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event.

All concur.